United States District Court
Southern District of Texas
**ENTERED**
October 20, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PATRICIA WILLIAMS, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-02681 |
| | § | |
| BRITISH AIRWAYS, et al., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

# ORDER

Pending before the Court is Defendant City of Houston's ("the City") Motion to Dismiss under 12(b)(1). (Doc. No. 18). Plaintiff, Patricia Williams ("Plaintiff" or "Williams"), responded in opposition. (Doc. No. 19). The City replied. (Doc. No. 20). This Court thereafter ordered the City's motion to be converted into a motion for summary judgment. (Doc. No. 31). The City then supplemented its original motion as converted into a motion for summary judgment. (Doc. No. 34). Plaintiff responded in opposition. (Doc. No. 41). The City replied. (Doc. No. 46). After the Court permitted additional discovery, Plaintiff filed a supplemental response. (Doc. No. 58). The City filed a final supplemental reply. (Doc. No. 59). Plaintiff surreplied. (Doc. No. 62). Having reviewed these documents, the record, and the applicable law, the Court hereby **GRANTS** Defendant City's Motion for Summary Judgment. (Doc. Nos. 18, 34).

## I. BACKGROUND

This is a trip-and-fall case that arose on December 22, 2024, when Plaintiff arrived at George Bush Intercontinental Airport in Houston, Texas ("IAH"). (Doc. No. 57, ¶ 12). As Plaintiff was traveling on British Airways from London, England, she was required to re-enter the country

at Customs and Border Patrol located in the Federal Inspection Services ("FIS") building. (Doc. No. 18, p. 7). This required Plaintiff to exit Terminal D of IAH and walk through a newly constructed terminal which is connected to the FIS building. (*Id.*). The hallway in this terminal was constructed with an Architecturally Exposed Structural Steel ("AESS") aesthetic, and as such, it had exposed steel I-beam struts diagonally lining the otherwise floor-to-ceiling glass walls. (*Id.*). The terminal was approximately a quarter of a mile long with a downhill slope of 1 inch for every 2 feet. (*Id.* at p. 28). The hallway does not have handrails but features footrails or cane rails between the I-beam struts. (Doc. No. 57, ¶ 12-13).



(Doc. No. 18, Ex. A).



(Doc. No. 18, Ex. B).

Plaintiff exited the plane and began walking down this terminal when the downhill slope allegedly caused her to speed up, and she subsequently fell, hitting one of the exposed I-beams and eventually hit the floor. (*Id.* ¶ 12). Plaintiff remained on the ground for a some period of time before British Airways staff noticed her and called for assistance. (*Id.*). Plaintiff noticed a child also trip and fall in the terminal. (*Id.*).

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331-32.

Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). "A municipal government enjoys immunity from suit unless its immunity has been waived." *Westside Ventures, Ltd. v. Houston Comm. Coll. Sys. Dist.*, 4:19-cv-02928, 2024 WL 1348445, at *2 (S.D. Tex. Mar. 29, 2024) (quoting *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014)). Governmental immunity defeats a trial court's subject matter jurisdiction. *Ashley v. Clay Cnty.*, 125 F.4th 654, 661 (5th Cir. 2025).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. ANALYSIS

The Texas Tort Claims Act ("TTCA") provides a limited waiver of governmental immunity for torts committed by or on behalf of the governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Specifically, a municipality is liable "for damages arising from its governmental functions . . . including but not limited to . . . [the operation of] airports." *Id.* § 101.0215(a)(10). "[I]f a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). This limitation, however, does not apply to a governmental unit's duty to warn of "special defects such as excavations or obstructions on highways, roads, or streets or . . . of the absence, condition, or malfunction of traffic signs, signals, or warning devices." *Id.* § 101.022(b). A governmental unit maintains immunity against claims that it failed "to perform an act that the unit is not required by law to perform" or its decision (or failure to decide) to perform an act for which the law grants the unit discretion. *Id.* § 101.056.

Plaintiff has asserted various and sometimes overlapping claims regarding Defendant City's liability under the TTCA, including: (1) negligent implementation of a formulated policy, (2) premises liability, (3) premises liability for special defect; (4) ordinary negligence, and (5) vicarious liability. The City argues that none of the TTCA provisions cited above waive its immunity against this suit and that Williams has failed to raise a genuine issue of material fact to the contrary.

### 1. Negligent implementation of a formulated policy

Williams asserts that the City developed a policy "to keep passengers moving[] [and] to prevent passengers from striking or making routine contact with the exposed trusses and I-beams." (Doc. No. 57, ¶ 13). She argues that the City implemented this policy by installing footrails rather

than handrails between the I-beams along the sloped hallway. (*Id.*). In doing so, she asserts, the City failed to implement their own stated policy because the footrails did not fully satisfy the stated safety objective—in other words, the problem was not with the design decision but rather with its subordinate execution. (*Id.*). In support of this assertion, Plaintiff points to deposition testimony from the corporate representative for the City, Michael Lawrence, the use of handrails and/or footrails was not discussed during the design process. (Doc. No. 58, Ex. 1, 27:16–30:7). From this, she asks the Court to draw the conclusion that the use of footrails rather than handrails came during the implementation, not policy or design formulation process. Thus, she argues it should fall outside of the TTCA's protection for the performance of discretionary function.

The City rejects this characterization, arguing that the implementation of footrails as opposed to handrails was a discretionary decision made in the course of designing the hallway and thus falls within the exception. Lawrence, testified to this effect, stating that the use of footrails part of the "progress of design," and rejected the characterization that such a decision constituted "implementation." (Doc. No. 59, Ex. 1, 73:5–9). Lawrence instead described "implementation" as the actual "construction of the project" itself. (*Id.*). Plaintiff does not offer evidence to the contrary and instead argues that Lawrence's testimony is not dispositive as the question of whether something is a policy or implementation of policy is a question of law. (Doc. No. 62, p. 3).

The Supreme Court of Texas explained the difference between formulation of a policy and implementation of a policy in *State v. Terrell*. 588 S.W.2d 784 (Tex. 1979). There, the state developed a policy of detecting and apprehending individuals exceeding the speed limit through the use of radar and police cars to enforce the speed limit. *Id.* at 788. The accident in question involved an officer who, in his attempt to apprehend a speeder, struck another vehicle in his path. *Id.* Such a directive was clearly not part of the formulated policy. The state was therefore liable for

resulting injuries. *Id.* While the policy decision to use police cars in apprehending speeders was immune from suit, the implementation of hitting other cars in the process of doing so was not. The Texas Courts of Appeals have further clarified the nuance of this distinction as the difference between taking action at the planning or policy-making level versus taking action at the operational level. *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 124 (Tex.App.—Houston [14th Dist.] 1997, *no pet. hist.*)("If an act involves personal deliberation, decision, and judgment, it is discretionary[,] . . [but] if an act is such that the actor has no choice . . . it is ministerial.").[1]

In *Loyd*, the appellants complained of injury as a result of the Municipal Utility District's ("MUD") decision not to add corrosion inhibiters to its water supply. *Id.* No statute or regulation required the use of corrosion inhibiters, and the Board of Directors of the MUD had established a policy not to use them. *Id.* Thus, the MUD was immune from suit for its decision not to add corrosion inhibiters. *Id.* Conversely, in *Forbus v. City of Denton*, the court considered whether the decision to provide a particular type of mattress to prisoners was the formulation of policy or the implementation of a policy. *Forbus v. City of Denton*, 595 S.W.2d 621, 623 (Tex.App.—Fort Worth 1980, *writ ref'd.*)(July 9, 1980). The court held that while the decision to provide a mattress at all constituted a policy decision, the decision of which particular type of mattress to provide was incidental to the initial policy and thus constituted the implementation of policy. *Id.*

Here, the City's design team, composed of architects and engineers, was designing a passageway to ensure that international travelers went directly to customs after disembarkation. It decided to use an Architecturally Exposed Structural Steel aesthetic and thus left support I-beams exposed. (Doc. No. 18, p. 24). Lawrence testified that the design team developed a policy to safely

---

[1] Discretionary acts are those for which the governmental unit is making a policy decision. By contrast, a ministerial decision is one in which the governmental unit is putting a policy into action. *See Loyd*, 956 S.W.2d at 124. A governmental entity cannot be held liable for the former.

move passengers from the terminal to customs, discourage loitering beneath the I-beams or rubbing up against the walls, and keep passengers from hitting the beams. (Doc. No. 59, Ex. 1, 21:9–15). At some point in the process, the design team decided to use footrails between the I-beams to keep travelers away from the wall and beams even though they were not required to do so either by law or regulation. Lawrence explained that handrails would not serve the same purpose and, in fact, would have been a hindrance to this purpose. (*Id.* at 32:14–33:5). As such, the decision to implement footrails rather than handrails was not the implementation of a previously-agreed-upon plan but rather a discretionary design choice for which the City is immune to liability.

**2. Premises Liability**

Williams claims that the City has waived immunity through TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) for premises liability. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385–86 (Tex. 2016). That section limits a governmental unit's duty for premises liability to that which a private person owes to a licensee unless the claimant has paid for the use of the premises.[2] *Id.* § 101.022(a); *Tex. Facilities Comm. v. Speer*, 559 S.W.3d 245, 250 (Tex.App.—Austin, 2018, *no. pet. hist.*). "That duty consists of not injuring the licensee through willful, wanton, or grossly negligent conduct, and to either warn the licensee or make reasonably safe an unreasonably dangerous condition of which the other has actual knowledge and the licensee does not." *Tex. Facilities Comm.*, 559 S.W.3d at 250. Therefore, to invoke this waiver in the absence of willful, wanton, or grossly negligent conduct, a claimant must generally prove:

> "(1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; and (5) the owner's failure was a proximate cause of injury to the licensee."

---

[2] The parties agree that Plaintiff is a licensee. (Doc. No. 19, p. 9 n.17).

*State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

A condition presents an unreasonable risk of harm when there is "a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752, 754 (Tex. 1970). Although the inquiry of whether a condition is unreasonably dangerous is generally a fact question, Texas courts have "consistently held that common or innocuous hazards are not unreasonably dangerous as a matter of law." *Pay and Save, Inc. v. Canales*, 691 S.W.3d 499, 502 (Tex. 2024). Thus, to raise a fact question on the issue, a plaintiff must produce some evidence of prior accidents, injuries, complaints, or reports; regulatory noncompliance; or some reason why this condition was considerably more likely to cause injury. *Id.* at 503; *see also Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162-63 (Tex. 2007) (holding that a pedestrian ramp without a handrail was not unreasonably dangerous as a matter of law).

Williams claims that the design of the terminal created an unreasonable risk of harm to her and thus the City owed her a duty to make it safe or warn her of the danger. Specifically, she notes the downhill slope of the terminal and the I-beams placed along the walls without handrails as unreasonably dangerous. The City notes that the angle of the slope was such that it fell 1 inch for every 2 feet of distance. (Doc. No. 18, Ex. D). Relevant Texas Accessibility Standards explicitly do not require handrails with such a decline. Tex. Access. Standards § 505.1. Plaintiff asserts that she observed a child also trip and fall in the terminal. (Doc. No. 57, ¶ 12). Lawrence testified, however, that he was unaware of any complaints or reports of injury before Plaintiff in the terminal. (Doc. No. 59, Ex. 1, 35:9–14).

Further, whatever danger the terminal may have presented, it was open and obvious to all, including Plaintiff. In Texas, property owners generally have no obligation to warn or cure a danger

that it open and obvious. *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021). "Whether a danger is open and obvious is a question of law determined under an objective test. *Id.* The question is not whether Plaintiff subjectively or actually knew of the danger but "whether a reasonably prudent person would have known under similar circumstances." *Id.* Plaintiff observed the exposed I-beams and the slope of the terminal. To the extent that the terminal presented any danger to travelers, it was sufficiently open and obvious such that Plaintiff is "charged with knowledge and appreciation thereof." *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516 (Tex. 1978). Plaintiff has not provided any evidence upon which a reasonable jury could find that an unreasonably dangerous condition existed in the terminal or that she was unaware of the condition.

**3. Premises Liability for Special Defect**

In addition to the above, Plaintiff argues that the I-beam terminal constitutes a special defect under TEX. CIV. PRAC & REM. CODE. ANN § 101.022(b). This subsection provides an exception to the otherwise applicable limitation on premises liability where the governmental unit owes the plaintiff the greater duty that a private person would owe to an invitee. *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). "That duty requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware." *Id.* An invitee must prove that:

> (1) A condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; [and] (4) the owner's failure was a proximate cause of injury to the invitee.

*Id.* (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1972).

For this section to apply, Plaintiff must show that the condition constitutes a "special defect." Whether a condition constitutes a special defect is a question of law for the court to decide. *Payne*, 838 S.W.2d at 238. The statute includes examples: "special defects such as excavations or obstructions on highways, roads or streets . . . or malfunction of traffic signs, signals, or warning devices[.]" TEX. CIV. PRAC & REM. CODE. ANN § 101.022(b). The Supreme Court of Texas has stated that courts are to "construe 'special defect' to include those defects of the same kind or class as excavations or obstructions." *Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (citing *Cnty. of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)). In determining if a special defect exists, courts look to factors such as the "size, nature, location, and permanence of the condition." *Univ. of Tex. at Austin v. Hayes*, 279 S.W.3d 877, 889 (Tex. 2009).

Explicitly in the statute and in cases interpreting this subsection, "special defect" has been construed to apply to roadways, excavations, and obstructions. The Supreme Court of Texas in *Payne* stated that conditions can be special defects "only if they pose a threat to the ordinary users of a particular roadway." *Payne*, 838 S.W.2d at 238 n.3. Plaintiff does not cite to any case law supporting an extension of this definition of special defect to include an indoor airport terminal or to the alleged flaw in the terminal's design, nor does the Court identify any. The record does not indicate that the alleged condition of the terminal impairs vehicular or foot travel or threatens ordinary users in the manner that courts have consistently looked for when analyzing special defects. As a matter of law, the terminal in question does not constitute a special defect to which the special defect exception might apply.

**4. Ordinary Negligence and Vicarious Liability**

Plaintiff alleges liability under ordinary negligence, but it is unclear to what independent negligent act or omission she is referring beyond that which is asserted and rejected under the

above bases for liability. (Doc. No. 57, ¶ 18). Further, Plaintiff's claim of vicarious liability fails to raise a fact issue for the same reasons described above. Thus, Plaintiff has failed to raise a disputed issue of material fact.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. Nos. 18; 34).

Signed on this 20th day of October, 2026.

Andrew S. Hanen
United States District Judge